Good morning, Your Honors. May it please the Court, I'm Randy Baker for the Appellants. I'd like to reserve six minutes of my time in rebuttal. On appeal, we've raised two issues in this case. We contested the District Court's dismissal of the charges of failure to warn of D.T. based on implied preemption, and we've also challenged the District Court's dismissal of the charges of defective legroom configuration on expressed preemption. I plan to focus on the first of those issues. THE COURT May I ask you a real technical question? THE APPELLANT Yes, Your Honor. THE COURT I just want to make sure that there's sufficient finality under Rule 54b. None of the plaintiffs here had international Warsaw claims? THE APPELLANT Actually, Your Honor, several of the plaintiffs did have both Warsaw claims. THE COURT Against the same defendants? THE APPELLANT That I'm not sure of. My memory is no, but I can't assure you that that's the case. THE COURT Okay. And whether there's real finality under Rule 54b as to these defendants or if, and maybe this is the way to ask, if we affirm the Court's decision, are the defendants that are before us now out as to the plaintiffs, or are there some further proceedings in the District Court that you anticipate? THE APPELLANT Well, insofar as these defendants are also defendants in the Warsaw cases, which are pending, also on appeal now, those cases we would anticipate would still be continuing. THE COURT Well, is there real finality, then? THE APPELLANT Well, Your Honor, the District Court certified the cases. Neither party contested it. Judge Walker found that there was no reason for delay. THE COURT But each one of these cases was not. THE COURT Are you saying that as to these claims, there's finality under 54b? THE APPELLANT Yes. THE COURT Not necessarily as to these parties, but as to these claims? THE APPELLANT Yes, that's correct. THE COURT The non-Warsaw claim? THE APPELLANT Exactly. There's not a situation where they're claiming both from international travel and domestic travel. They got the DVT. THE COURT In, I believe, three or four of the cases, what occurred was there were several legs to the flight, a domestic leg and a foreign leg. And in those cases, we have claimed both under tort law and under the Warsaw Convention. Judge Walker first ruled and found final the judgments in the domestic tort law cases. He subsequently found for the defendants and entered final judgment in the Warsaw cases. So were you to find that Judge Walker's decision is correct as to the domestic law claims, as to the domestic legs of the trip, as far as I understand, absent reconsideration, that would be the end of those claims. That would be the end of the proposition that, for example, Continental Airlines is liable to Mr. Cohn for flying from California to Washington, D.C. Have I answered your question? THE COURT So the long and short of it is some of the plaintiffs, even if you lose here, are going to go back and pursue potentially foreign travel claims. THE WITNESS Some of the plaintiffs have pursued and are currently litigating foreign travel claims for a different leg of the trip, not the same transaction. THE COURT But were they separate causes of action in the complaint? THE WITNESS Yes. THE COURT Okay. THE WITNESS Because this case concerns common law torts, which are traditionally within the purview of States, and the preemption doctrine in the United States recognizes that the traditional police powers remain within the purview of the States. There is a presumption against preemption of these claims. This Court has held, for example, in the Charest case, which we cite, where plaintiffs brought various personal injury claims, including negligence, that the presumption against preemption applied. In this case, indeed, the plaintiffs bring claims for negligence, a breach of duty of a common carrier, and for the same reason that presumption applies here. Now, that presumption against preemption was also applied by this Court in the Skysign case. That did not involve personal injury, but, again, it illustrates the kind of local police powers laws which are entitled to the presumption against preemption, as opposed to laws directed at a field subject to Federal regulation which aren't. So in that case, two local ordinances were an issue. Honolulu had an ordinance prohibiting, generally, the display of advertising signs off the site of the advertiser's business. The Court, since that was a general regulation about advertising, the Court held the presumption against preemption applied to that law. The other line issue in that case was not within the traditional purview of the States. That was a law prohibiting aerial display of signs. Nonetheless, interestingly enough, in Skysign, the Court held that neither of those laws, even the latter law, which was not entitled to the presumption against preemption, the latter law also was not preempted. And what's particularly interesting for this case in the Skysign holding is it was acknowledged that the ordinance prohibiting the display of aerial signs was in part a safety ordinance. It was intended to avoid unnecessary diversion of people on the ground to the sky. I believe it was drivers. And what the Skysign Court held and what distinguishes the Ninth Circuit's position from that of the Third Circuit in the Abdullah case cited by the defendants and more recently, I believe it's the Green case from the Sixth Circuit, is the field of aviation safety is not fully occupied, is not fully preempted. And Skysign went on to explain that the density and volume of regulation in a field is not sufficient to establish preemption there. And Skysign was citing the Supreme Court's decision in Hillsborough asserting that. That position was repeated subsequently in the Spreizma case, which we also cite in the U.S. Supreme Court, and by Justice Geyer – Justice Breyer in the Geyer case. Spreizma is useful for analyzing this case as well, because Spreizma was a case involving the failure of a boat manufacturer to provide a propeller guard. The plaintiffs brought suit on behalf of their deceased, who was killed by the unguarded propeller. In that case, the defendants claimed the lawsuit was preempted. The claims were under common law torts. And what they argued was that since the Coast Guard had been given plenary authority by Congress under the Federal Safe Boating Act to regulate boating, indeed, to regulate the design of boats, the kind of equipment they had to carry, the kind of warning devices they had to use, very comprehensive. And indeed, the Coast Guard exercised that authority and issued regulations covering an enormous range of boating activities. Nonetheless, the Court held the lawsuit was not preempted. And what was interesting was, in that case, the Coast Guard actually had considered enforcing a rule requiring propeller guards. And they expressly elected not to require it. Nonetheless, the plaintiffs proceeded on the claim. And what the Supreme Court held was the decision of the Coast Guard not to require the propeller guard showed no conflict with State law. And, in fact, Justice Breyer, who wrote the Geier decision, Geier v. Honda, that was the automotive case where the plaintiffs claimed that the failure to include airbags was negligence, inactionable. Interestingly enough, in that case, although the Court did find preemption, and it did hold for the defendants, it did not find field preemption in that case. What Justice Breyer pointed out there, which does not exist here, was that the Department of Transportation had carefully analyzed the various options of whether to have a program in which, over time, over a period of years, airbags would be introduced to cars. And it was concerned, the Department of Transportation showed at the time it passed the regulation and in briefing, that it was concerned that requiring airbags too quickly would actually interfere with its safety objectives. In this case, we have nothing of the sort. There's no comment by Congress. There's no comment by the FAA that there is any concern on their part that warning passengers about deep vein thrombosis would somehow undermine any goal of the Federal Aviation Administration. Now, the district court and defendants have argued, in addition to field preemption, that there's also an actual conflict. Can I ask you to address the Abdul case and whether you think that that's a good analysis? And if so, how does that affect your claims here? Well, I think... You know, you don't like the Witte case, so I want to ask you about that. Well, I think Abdul is problematic for several reasons. It's problematic, first, because it conflicts with SkySign, because SkySign held that aviation safety is not fully occupied, and Abdul holds that it is. Moreover, I think SkySign is rightly decided in the sense that it correctly reflects U.S. Supreme Court decisions going back to Silkwood, which was the case that held punitive damages were authorized, even though the Atomic Energy Act fully occupied the field, going all the way up to the Spreizman decision. The gist of those cases is that common law torts are not going to be presumptively preempted absent some clear statement by the Congress or the regulatory agency that it doesn't want that interference, or absent, as in the Geier case, some clear conflict between the state law in issue and a Federal objective or a Federal regulation. Abdulla identifies no such conflict. In Abdulla, what happens is the Court has, in fact, pointed to the volume and density of regulation of aviation safety by the FAA, and from that alone, it inferred the field was preempted. And 14 CFR 91.13a about no care, can't operate a plane in a way that's careless or reckless, that would cause injury or death. That's correct. I don't believe that. They said that regulation essentially is the standard that preempts various state standards. Well, I think in order to accept that, I remember that, Your Honor. In order to accept that proposition, though, and to reconcile it with Spreizman and Hillsborough and even the Geier case, I think one has to go a step further and not simply show that there's a Federal regulation that also fits. And I agree, you know, that that regulation was arguably fitting. The question is, is there some reason to believe that enforcement of the state law, perhaps a more rigorous law in that case, as in the Spreizman case, where the State says if you don't have a propeller guard, you know, you owe tort damages if someone's hurt, is there some reason to believe that FAA objectives or congressional objectives are obstructed in that case if perhaps a more rigorous state standard, say, you know, a higher level of care is employed? There's nothing in the scheme to indicate that to be the case. In the Abdullah case, it's true. Counsel, could I just ask you, with respect to the warning claim, we're claiming that it's negligence not to give some kind of a warning. Correct. Is that correct? That's correct, Your Honor. Could you just help me, what is this warning that you would ask to be given? The warning we'd ask to be given is, first, that there is a risk of DVT when you're flying, as when you're sitting in a seated position for any length of time, and that there's prophylactic measures for it. One is you may not want to fly. Two, you can hydrate yourself. Three, you can exercise your legs. Four, you can wear compression stockings, all of which, there's good reason to believe, are strong prophylactics for DVT. Now, is it you, I don't understand, I guess I'm not understanding what you, what is the negligence? That's true with respect to cars. That's true with respect to trains. That's true with respect to judges who have to sit on the bench for long periods of time. So what is the special warning for airplanes? Well, Your Honor, we're not asserting. How would it be given? Well, it would be given in several forms. It would presumably be given at the time you're making the transaction to buy a ticket, to be advised that there's a hazard involved. It would be given possibly in advertising, as in the Cipollin case, where the U.S. Supreme Court distinguished what's on the package versus the kind of public service announcements and other media through which a warning could be delivered. It could be in the on-flight magazine, as, for example, counsel cited the Warsaw case of Rodriguez v. Air New Zealand. And it turned out in that case, in fact, a warning for DVT was included. It apparently wasn't adequate for that particular plaintiff. But it was on the in-flight magazine. And then, of course, you could have onboard oral warnings. You could have warnings on the safety card. The FAA regulations actually allow and account for airlines supplementing the warnings that are mandated by the FDA, I'm sorry, FAA, by adding additional warnings on the card. There's no reason the government, there's no reason the airlines could not do that in this case. Not to get way off on a tangent, but doesn't it seem to follow that the world has to warn everybody about everything? I mean, wouldn't there have to be a warning that airplanes crash? Terrorists take over airplanes and run them into buildings? Well, that's an issue I haven't investigated. As far as airplanes crash, I think that's sufficiently common knowledge that we would not succeed in a negligence lawsuit if an airplane crashed on the grounds that you weren't warned. So the difference is common knowledge and uncommon knowledge, things people don't know? To some extent, yes. I think what happens is, is the purveyor of the service in some privileged position with respect to this knowledge that the consumer of the service isn't? And in the case of airplane crashes, I don't think that's really the case. I think with DVT, especially since we're at the 12B6 stage, yes, we've asserted they have knowledge that our plaintiffs didn't have. Counsel, I just don't quite understand how you're going to have a warning that people shouldn't sit for long periods of time or else they risk some deep vein thrombosis. Consistently with the captain coming on and saying we're experiencing a period of turbulence and I'm turning on the seatbelt sign and the regulation that says that you have to be in your seat. Well, Your Honor, that regulation... I don't see how this functions. Well, you're right. If it were the case that during flights, captains said for the entire duration of the flight you must be seated, that would be a problem. But there's several reasons... I just flew on one of those two days ago. Okay. No getting up. Keep your seatbelts on the entire flight. Well, Your Honor, I would suggest at the 12B6 stage that at least it's a fact question whether on most or all flights that's the case. I'd also point out there's several other prophylactics which do not involve walking around. For example, being advised in advance that you may not want to fly at all. This is a hazard you may not want to run the risk of. That you can wear compression stockings and thereby not stand up. That you can do exercise in your seats as many airlines, especially foreign airlines, already advise their passengers. None of this involves walking around. And then, of course, there's at least we have to admit the factual possibility that indeed often you can walk around. In fact, people use bathrooms often on airplanes. What's the statistical probability of getting deep vein thrombosis if one flies on an airplane? I believe the matter we submitted in this record estimated that one in a million people in the United States have deep vein thrombosis. But I caution, when you get the blood clot, you don't necessarily develop all the symptoms. So how often do you actually end up like our clients in the hospital? I honestly can't answer that right now. Can I ask you a question? You're getting back, I'm trying to get back to, you know, what is the appropriate test? And there's something comforting about the Third Circuit's test. But you're saying that that would be inconsistent with SkySign. And you say, in SkySign, we said that the area of aviation safety has not been preempted entirely. But I can't find, I've got SkySign here. I can't see where they say that. What they say is a little different. It says, first, we must decide whether Congress has occupied the entire field and to preempt altogether any state regulation purporting to reach into the navigable airspace. I mean, it was a much broader population. It had nothing to do with whether they preempted airline safety. Oh, well, Your Honor, actually, the holding of the case is that the whole field isn't preempted. And the reason I believe that to be the case is one of the ordinances that the SkySign court held not to be preempted was the ordinance prohibiting the display of aerial signs. Right. The court found that that ordinance was intended, among other things, as a safety ordinance. The court then held, notwithstanding the fact that this is not a traditional area of state regulation, notwithstanding that this regulation is intended in part to enter the area of aviation safety, it is not preempted because the entire field of aviation safety has not been occupied. And they did not find from the record of regulations or from Congress an intent to fully occupy that field. Well, it's the authority to regulate the navigable airspace. I don't see where it talks about aviation safety. It was broader. I'll consult the brief. I didn't see that case as aviation safety at all. It was automobile safety on the ground, people looking up and crashing. Right. Looking up at the sign at the airplane. They were having signs underneath the wings. Right. But they were regulating aviation for a safety purpose. Airspace. Safety on the ground. On the ground. Automobile safety. Safety on the ground, but they were regulating airplanes in order to protect safety on the ground. But the airplanes had the signs underneath the wings. They weren't those things that they were pulling on, you know, ropes or whatever, right? Absolutely not. But, Your Honor, the court, I mean, it was very clear it was aviation safety because the court even said, had the FAA intended to occupy this area, they absolutely could have. So if it wasn't aviation safety, then it would not have been appropriate for the FAA to have the possibility to regulate. Well, no. They said that they could, that the FAA could extend its statutory authority to a degree that it regulates all airspace, but they said they hadn't. But it didn't deal with safety on planes. You know, what did that case have to do with airplane safety? Well, the court, I'm sorry I don't have the case right in front of me. Tell me what that case had to do with airplane, airline, flying safety. It had to do with the safe use of airplanes in relation to the public, just like a host of other regulations involving how long a runway is. The safety issues were people in automobiles basically looking up and being distracted while they were driving, is the way I saw it. I agree with Your Honor. My only point is that it was aviation safety because the court expressly said this was a matter within the purview of the FAA. Should the FAA have chosen to say, you know, you can or cannot have signs because they distract people on the ground, that was something the FAA could do, even though it may not have had anything to do with how safe the people in the airplane were.  That's not the 54B. That is, Abdullah, say that we were to apply an Abdullah result. What happens here? Do we affirm or do we send you back? Do you amend the complaint? What happens? Because there, what they did is they sent him back for a new trial. Well, I guess if you applied Abdullah, probably the same result should happen. It would be sent back and the proper standard to be applied would be the state So your basic state claim is a breach of duty of a common carrier to warn of known hazards? Well, there were four. There's a breach of warranty claim and there's a regular negligence claim and the fourth one escapes me at the moment. But they're all But you only appealed two, right? We appealed two causes of action, so to speak.  One was the failure of a carrier to warn of known hazards. One was the failure to warn, which we said fell within breach of duty, breach of warranty, negligence, breach of duty of a common carrier. And then we also brought a claim for the leg room. Again Would you redress that, please? The leg room claim? Yes. Yes. So in the case of the leg room claim, of course, the district court also followed the Witte case. Witte said that you cannot claim inadequate leg room because its effect will be to require fewer seats on the airplane and that will raise fares and thereby you run a foul against the Airline Deregulation Act, which prohibited states from regulating fares, routes, and services. Now, the problem we see with Witte's reasoning and the district court's reliance on it is Witte follows from the first U.S. Supreme Court case to address the ADA. There were two of them. The first was the Morales case in 1992. The second was Wolins in 1995. In the 1992 case, what was litigated was a consumer protection law through which an attorney general, I believe of Texas, actually tried to control the content of the advertised their fares. So the court decided the case on two grounds. One was, I think, the intuitively obvious one, which that's a state regulation that directly concerns fares, literally how you can talk about them. But then the court developed an alternative holding. It cited the language, the words, related to in the preemption statute. And it said, well, this regulation is also preempted because it relates to fares. And the reason it relates to fares is because ultimately it will probably increase costs to airlines. And that will cause them to raise their fares. Now, the problem with that, and I should add, the court specifically said the savings clause in the FAA, so the FAA is a 1958 law. The Airline Deregulation Act is added to that 20 years later. So the court says the savings clause is immaterial to this. The ADA has a very broad expanse. So anything related to fares or routes is preempted. Well, three years later in the Wolins case, the court restrained itself. Perhaps I'm using, poorly choosing my words. The court decided the ADA was more narrow. It did apply the savings clause. In that case, a state was regulating the use of frequent flyer miles. And what happened in Wolins was the court said, well, the tortious, the kind of fraud argument that the state was using to regulate advertising frequent flyer miles was preempted. The contract claims were not preempted. And the court specifically said that the savings clause is applicable. This court in Charas, a few years after Wolins and Morales, has applied the savings clause to the ADA. And this court expressly stated in Charas that the ADA is a narrow preemption statute. Now, clearly in this case, talking about the configuration of legroom, and we're still on 12b-6, so we don't even know whether altering the configuration of legroom is going to affect the number of seats, let alone costs or fares. So for that reason alone, it's inappropriate. Do we have to have a trial on that in your view? Well, I think we at least would need evidence. But I'd also point out in the Duncan case, which this Court decided after Charas, Duncan points out, and I think Common Sense points out, that if you're going to have any tort claims at all, that can raise costs and that could raise fares. And it doesn't really make sense, especially since this Court has said that the ADA is to be narrowly construed, to say that you can't have any tort claims against an airline. So certainly when we're on 12b-6 and we're alleging the legroom configuration is inappropriate, and we have no idea how much, if at all, fares or costs are affected, that preemption should be applied, we don't even know the impact yet. Let me ask you a variation of your claim, because suppose that the claim were that they should fly a bigger airplane into this market. I'm sorry, Your Honor, I didn't hear you. Suppose the claim were, to preface this, I've spent a lot of miserable hours on little planes, little Skywest and little Canada jets. Suppose that they don't have a lot of room in them. Now, suppose that your claim were not that you should reconfigure, but that you should fly a larger plane, a 747 in this market, for this distance. Would that be preempted by the preemption for regulation of services? I think it would. Or routes? Yes. I think it would. Could I get back to the first thing I started with, just to make sure? You said that you had other claims for relief even on the basis for relief on the domestic claims, but they're all gone. So if we affirm this, the judgments by the district court, you can't go back and say, okay, we've got these other theories now on the domestic claims. I don't think anyone's going to take us seriously if we try that. No. You can't. You're saying it's over on the domestic claims. I believe that's correct. You're saying that the causes of action in the complaint, the claims, are delineated differently for domestic claims and international claims. The international claims are under the Warsaw Convention. That's right. And, in fact, those have been dismissed as well and are on appeal. Okay. Thank you, Counselor. You're over time. We'll hear from the other side. Thank you, Your Honors. May it please the Court, Bill Boyce, on behalf of the appellees. I'd like to begin by making sure that I make very, very clear the relief that we're seeking and what would happen. We want to ask the Court to affirm the district court's dismissal. There is no prospect of remand here. I want to follow up on Judge Moskowitz's question a little bit earlier. There is no prospect for remand here with respect to the domestic claims. They have been pleaded. There are disclaimers in the briefing that says we're going solely on state standards. We're not saying, the plaintiffs are not saying that there is some kind of a federal standard that they're invoking. I do want to make that point clear. If we were to adopt the Abdulla standard from the Third Circuit, we wouldn't remand to allow them leave to amend to plead a violation of 14 CFR 91.13a. No, sir. That would not be an appropriate resolution when the plaintiffs have specifically disclaimed in their briefing in this Court any reliance on a federal standard. And I would direct the Court to the plaintiff's opening brief at page 38. Here, there is no controlling standard concerning DBT warnings. I would also direct the Court to the reply brief at page 18. These claims are not predicated on federal law. I would also note for the Court that in the plaintiff's opposition in the district court to dismissal, that there is absolutely no invocation of 14 CFR 91.13a, which Abdulla characterized as sort of the gap filler or the catch-all safety provision. And I want to stress as well, addressing first off implied preemption, a lot of the argument that has been presented this morning, a lot of the argument that has been presented in the briefing, is the plaintiffs attacking arguments we're not making and attacking holdings the district court did not make. And by that, I want to focus in on what exactly is the field that we're talking about here that is being preempted. There are numerous references, particularly in the briefing, suggesting that Chief Judge Walker concluded that the field of airline safety has been preempted. I would submit to the Court that the holding that we are talking about here today is much narrower than that. The field that Judge Garth had participated on, that is addressing framed in terms of the field of air safety. The field that I think we're appropriately talking about here today is the field of passenger safety warnings on commercial airliners. The Court below, our arguments have been framed much more narrowly, and they track what the Fifth Circuit did in Witte. Witte took great pains to say, we, the Fifth Circuit in Witte, are making a narrow ruling, and that is the ruling that we advocated to Chief Judge Walker, and I believe that that's the ruling that he's made. So I just want to highlight that in order to affirm the ruling below, this Court does not need to hold that the entire field of air safety is preempted. And the Court does not need to hold that state common law remedies are preempted. What Judge Walker did and what Witte did is to say that before you get to any question of whether or not a state remedy exists here, a state common law remedy, you are first going to have to show a violation of a federal standard. And that can't be done for the reasons that we'll talk about here shortly. And so I just want to emphasize that as strongly as I can. And I think that demonstrates why the contention that there is somehow a conflict or a tension between what we're advocating here, what the defense is advocating, what Judge Walker held, and Skysign, for example, is just overstated. It's really not an issue. Well, you set up this field as a very narrow field, passenger safety warnings on commercial airlines. Yes, sir. How do we know that that's an appropriate limitation on the concept of field in a case like this? I mean, you could say passenger warnings, people named Jones on commercial airlines. I mean, you're trying to ratchet this down and sort of create a very limited area. Is that appropriate? I think it is appropriate when you look at the context of the specific warnings and the associated, the warning regulations and the associated advisory circulars that we're talking about. So this asks a bigger question. What is a field? I think each of these preemption areas is extremely fact-specific. And the field sometimes gets defined narrowly, sometimes gets defined more broadly. It really comes down to two things, I would submit, Judge Trott. Number one, what is the governing regulation that you're talking about that you're working under here? Number two, what are the regulations that go with that? And I think this ties into the references that SkySign made repeatedly that at a minimum, at a minimum, we know that certain subfields of aviation have been preempted. For example, I don't think that there's any dispute that a city that tries to regulate, impose a noise ordinance that would affect the timing and landing of a plane is not going to get there. Getting back to the field, why shouldn't we say the field is that they preempted are warnings that are given while you're in the airplane? Like, for example, getting on the plane last night to come down here, there's a big sign right as you get on the plane at the last piece of the jetway that says that this plane or something to the degree that uses chemicals that could cause cancer, the sign you see every place. And I'm thinking, gee, there's a sign. Is it just they voluntarily put that sign up there? The airline said, gee, maybe we ought to tell them that there are things in this plane that could cause cancer. But the point that you're making is, if you look at the regulations, it talks about what they have to tell them about seatbelts, about the oxygen mask, the laboratory smoking, etc. It doesn't say anything about what you should tell the air travelers before they get on an airplane. And I'll give you this example. Say that the airplane's rule is that if we have a problem with the pressurization of the cabin, we're going to take the oxygen out of the compartment where people put their pets. And so, therefore, the pets will die. Shouldn't they put a warning out saying, if you take your pet, beware that if there's problems, even to a small degree in the cabin, we're going to turn the oxygen off in the pet compartment? And you would say, no, preempted, because all they have to do is tell them seatbelts, oxygen, no smoking. And those are all things that occur on a plane, or as George Carlin would say, in a plane. Those are all things that occur in a plane. And what you're talking about is, you want to say the field is all warnings. But there's nothing else in the regulations that talks about warnings when you buy a ticket or elsewhere. Well, let me try to answer that question in a couple of respects and highlight a couple of things. Number one, I think a good starting place is Section 44701, which is the grounding statute for the authority for regulations. And if you look at that, you've got the direction that the Administrator of the Federal Aviation Administration shall promote safe flight of civil aircraft and air commerce by prescribing, and then you come down to Subsection 5, regulations and minimum standards for other practices, methods, and procedures the Administrator finds necessary for safety in air commerce and national security. So the starting point is that the statute itself directs you to the regulations. If you turn to the regulations themselves and to the associated advisory circulars, I think what you see, for example, 14 CFR 121.317 is the regulation that's framed in mandatory terms, passenger information requirements. But those are all in-plane, pre-flight in-plane requirements, nothing about general terms like when you buy a ticket or on the website or anything like that? 121.317, I think, is dealing with in or on the aircraft. But I think this notion was also suggested that there has been room left for supplementation. And I think where that is coming from is the advisory circular that appears in the excerpts of record at approximately pages 45 through 48. But I think if you focus in on the supplementation, what's being talked about is supplementation with respect to specific things such as putting the tray up or use of electronic devices during flight. So the point being, and I want to make sure that I'm trying to answer your question appropriately, is that I think when you marry the broad statutory command with the mandatory nature of the regulations that flow from that statutory command, that's where the field preemption, that's where the exclusivity applies to encompass things that are being talked about as potential warnings. In part, I find it interesting that there's been some specificity about what the warnings are supposed to be. That's been a fairly elusive goal from the defendant's perspective in terms of trying to get some specificity about what exactly should be warned about. And I know that Chief Judge Schroeder's questions were trying to zero in on that as well. I think it's also worth noting that if you look at the specific pleadings that have been asserted, you know, we can address hypotheticals regarding various warnings outside the actual aircraft environment. But when you get right down to specific pleadings, for example, this is the Van Arsdale case, appearing at page, Volume 3 of the excerpts of record, page 601. In that case, the plaintiffs are saying specifically, these are, we want warnings on cabin announcements and we want warnings on placards and the placards that go in the seatback pocket. So I understand the potential for hypotheticals here, but I do want to make sure that we remain grounded in and focused on the actual pleadings here. And what's being contemplated here are cabin announcements, the videos or the oral announcements that get made, depending on the flight that you're on, and the safety placards. And that brings us back to the fact that when you look at how the cases are shaping up right now, you've got Witte certainly directly on point dealing with DBT warnings in all their potential various formats that may be advocated. You've got Abdullah, which I think is a little bit broader. Obviously, it covers the field safety. If the Ninth Circuit were inclined to take on that issue, I think Abdullah is appropriate and should be followed. I'm not sure the court needs to go that broadly in order to affirm the district court's dismissal. So if we start from your premise that the field as you describe it is very narrow and that it's passenger safety warnings on commercial airliners, what follows if we adopt your definition of the field or the subfield in this case? Therefore? Therefore, the district court's dismissal order should be affirmed because all of the variations that are being talked about by the plaintiffs are safety warnings relating to what should be... So they're field preempted. Probably the more precise way to say it would be that the subfield of passenger safety warnings has been field preempted. In plain warnings like on the placard or announcements. I think it's going to encompass all of the various warnings here because a lot of... Going back to this notion, well, perhaps there should be some information in some context outside the plain. I mean, a lot of the questions that we are talking about here today and this goes back to your question, Judge Trott, about you can warn forever about any number of things. A lot of the questions that we're talking about here is dressed up as preemption but it's really a question of who decides? Is this going to be an FAA regulatory decision about which of the endless possibilities of things that could be warned about are actually going to be highlighted and brought to consumers, to passengers' attention in whatever way? Or is this going to be turned into a jury question under some kind of general negligence reasonableness standard? And I think if you look at the statute, if you look at the governing regulations, I think that the who decides question is coming down pretty decisively in favor of the FAA, the regulatory body charged with the responsibility of having the big picture and weighing all the different considerations. You highlighted the turbulence issue. There are a lot of built-in tensions. Big airplanes, small airplanes, getting stuck on runways for hours end-on-end. Let me take a page out of Judge Pregerson's approach to these kinds of issues. Is there such a thing as DVT, deep vein thrombosis? Yes, that's a recognized medical condition. And it's recognized that it's created on occasion by people sitting on airplanes without getting up and moving around? I think that the most accurate way to say it is that prolonged sitting in any environment, plane, train, automobile, whatever, can be a factor. It's not specifically associated with... But it happens on airplanes. Dan Quayle apparently got it, you know, from sitting on an airplane from what you read in the newspapers. Well then, why don't you, why are you resisting an effort to do something about it and tell the people that you're putting on your airplanes that they're running a risk of getting deep vein thrombosis? I think that... That's what Harry Pregerson would want to know. To answer Judge Pregerson's question, I would try to address it this way. The concern here is that there is an endless variation among the population of people flying. Countless numbers of people flying. Everybody with their own individual circumstances, medical conditions. And once you start down this road of saying that this particular circumstance, this particular condition has got to be the subject of a specific warning and it's got to be delivered in this way and it's got to say this, this, and this and you have to reference compression stockings however specific you want to get. That is a never-ending process because you've got... But we got on that road years ago with cases like Buick versus McPherson with Cardozo and everybody else. We got on that road. I mean, there was a long time when manufacturers, suppliers, purveyors of services didn't need to tell anybody anything. And then the courts decided 50, 60 years ago, that's not right. You know, if you're in a privileged position, as it's sometimes been described, if you have more knowledge than the people you're selling your products or your services to, that therefore you do have a duty to warn people of defects and dangers. I mean, we're inundated with these kinds of signs and warnings now. You can't walk into a building without saying, the building uses cancer-causing materials. You know, they're all over the place. And you know, I mean, so it seems that you're way behind on that power curve if you have a known problem. So your point is it's just too murky to get into? My real point is that it comes back to the who-decides question of the great number of things that potentially could... Well, it sounds like you're going to argue in a rules-making context that they shouldn't have any warnings. Well, I don't know that that's... Because it's murky. I think that the real question here is when the administrative agency charged with responsibility for balancing all of the considerations, getting up versus staying seated, you know, turbulence versus an asserted threat from DVT, when the agency charged with weighing all those considerations is presented with all the information, then that's the way congressionally, regulatorily, that this has been set up to be addressed. And I think that that dovetails with the way that Whitty has approached it, you know, the dilution point that you mentioned. You can be inundated with too much information. So that if you attempt to inform about everything, you wind up informing about nothing, those sorts of things. But isn't that really the issue for the FAA to decide? That they could decide, okay, look, this DVD, DVT thing is a problem and this is what the warning should be and it should be placed in the manual or, you know, the flight book that you have there or it should be told to everybody when they buy a ticket. But they could take care of it. They could clearly, if they wanted to, enter the field and preempt warnings about DVT. Right? Our position is that the field has already been preempted. Well, that's a good point about seatbelts, smoking, and wearing the oxygen mask. I understand that. But it seems to me that they could do that. I recall somewhere riding on an airplane somewhere and if you look in the back of the book, you know, where they tell you what the movie is, et cetera, and they talk about things during flight. They did mention something about DVT. But that's neither here nor there. Let me get back to another... I'm sorry, I just hope your time is going and I just hope you're going to talk about the seat configuration claim because I find that a little more troublesome. Well, if I may respond to... Definitely. She's the chief. Yes. I think that, again, arguments are being attributed to us that aren't the real argument. And I think part of what's going on here is that the issue here, the contention is not that there will be additional costs from lawsuits. That's not the argument. The argument is that this specific claim is addressing a contention that there needs to be more space between seats. And it's algebra. You've got a limited amount of cabin space. The more space you're talking about between seats, the fewer seats you've got. And that's where it comes... It's not somehow an economic effect from that. There isn't any claim based on something that requires greater safety precautions that physically affects the plane. Isn't that going to increase the cost and therefore ultimately perhaps increase the fairness? How do we just dismiss this? Because I understand that the claim was, well, this is substantial. How do we know that just on the basis of geometry or whatever? The effect on the fares. Right. Well, I guess in part, I'm not sure that there's a good answer to the question you're asking because I think that's the way the Supreme Court has set it up, particularly Morales and Wolins, which is to some degree here we're talking about a measuring of degree of effect. And I don't know that there's a bright line rule to say here's where the effect is sufficient enough to accomplish preemption and here's where it's too peripheral. That's one answer. But I also don't want to lose sight of this fact, which is if you look at what Walker ruled on it's consistent with the focus of the ADA on the competitive aspects of airline services and I think the FAA itself has indicated that. I want to make sure that I direct the court's attention to the statement that the FAA made in terms of its rulemaking and this appears in a record document number 52 this is a request for judicial notice document number 52 at page 6 where it says and this is the FAA responding to a request for rule making on permitting air carriers to adjust services such as seat size or seating accommodations free of governmental interference in accordance with the dictates of the marketplace is exactly what was envisioned in the airline deregulation act so to make sure I'm trying to answer your question chief judge Schroeder I think there is a specific economic and competitive link here and I think that there is an undeniable effect here that is sufficiently direct to bring us within the Morales decision I'm sorry what were you quoting from this is what I'm quoting from is an order of dismissal on a petition for rule making this was issued in 2002 it appears in the record is document number 52 starting at page 3 and I just highlight that as saying that this does indeed have economic effects and the basic logic I think is inescapable which is if you are contending that there needs to be more space between seats in a limited cabin environment you're talking about fewer seats part of the briefing response was a contention that we're not asking for an regulatory effect and you also can factor in the observation in the Geier case where the statement was specifically made it is understood and acted upon by the Supreme Court that if some kind of a state law tort standard is enacted that that's going to be followed we don't just assume that litigants are going to keep paying fine after fine and not do what a common law standard says they should do in this record have you ever argued that limits on the number of passengers that can be placed in a cabin relates to service rather than the indirect witty argument that this has to be effect on fares no we have not grounded this in the service part of the based on the pricing component   the service component of a community so the quality doesn't seem to help you because morales is a advertising relates to fare relates to airfares so they're off on rates how does morales help you because this really isn't rates you have to dig to get the rates well we submit that it is very directly related to rates because it's related to pricing of the seats maybe this is a way to put it seats on aircraft are what airlines have to sell and if you are reducing the number of those seats because you are going to increase the seats I think that the contention that's been developed in witty makes that it's going to have an effect if it's going to be related to relying on the broad language having the force and effect of law related to a price route or service of an air carrier that within the expansion of the preemption provision that's what gets you there. I'm not at all convinced that if you have to reconfigure the cabin necessarily you have fewer seats. That's not something you can take judicial notice of. It's not even common knowledge. These are things that I think maybe the best response is this is that number one, when you're talking about common law suits that try or that are aimed at establishing a particular standard and that standard is directly related to how many seats you've got in a plane, that gives you the direct connection that makes this an appropriate, to use the words of Morales, a forbidden significant effect upon fares. And maybe here's another way to get at it. This is quoting from Morales again, it would be an utterly irrational loophole that would allow this to be done indirectly, what couldn't be done through a fair. Because they're talking about advertising and fares and economic matter, you're talking advertising and fares, they're directly tied together. I just can't follow you factually. In any event, you have another question? I think Chief Judge Schroeder had one. No. Last question. When I go back to San Diego today, say the plane that came up to the airport, people had Legionnaire's disease on it and the flight attendants know it. And they don't have any duty to warn people who may have respiratory problems that Legionnaire's disease had circulated through the plane under your approach. I think that you would look to see if there is a specific federal regulation addressing diseases or potentially communicable diseases. I can't tell you as I stand here right now what that federal regulation might be. Assuming that there isn't. I think that there is not going to be a situation where a warning is directly required that says this person has Legionnaire's disease, the person sitting across from you may have a head cold, you know, the person. I was phrasing the hypothetical in such a way that Legionnaire's disease had circulated through the ventilation system just like it did in the hotel in Philadelphia years ago. They have no duty under that circumstance to warn. I think that that would be a situation where if there is not encompassed by a federal regulation addressing the potential for communicable diseases, that that's not going to be an appropriate topic for a state court jury to say it was negligent not to have a warning that this communicable disease or passenger may have had this disease. And that may also come to the realm here. I thought I heard a distinction being made that some things are so directly obvious to the public that warnings aren't required. You had raised the question, well, how about a warning that says sometimes aircraft crash? And the response is, no, that's so not correct. And I think that highlights the dangers of having that kind of a slippery slope to say this has to be warned about and the next thing has to be warned about and the next thing has to be warned about. And I will heed that warning and thank the court for his time. We'll give you some time to respond because we bombarded you with questions. But use your time wisely. Are any of your warnings not in plain warnings that you're requesting? Yes. Well, we, of course, are toward action so we're not seeking affirmative regulation. And you don't get any warnings at all out of winning, do you? I'm sorry, Your Honor? You don't get any warnings at all out of winning, simply damages for your clients, is that right? That's correct. And then every time an airplane goes into a different state it may be different warnings? Yes, Your Honor, and I'd like to    that Justice Breyer was talking about against Honda Motor Company that their failure to insult them was negligence. And what Justice Breyer said, because there's a savings clause in that law as there is in the FAA, and he said the savings clause shows that variation among state juries is a small price to pay for a system in which juries enforce safety standards, provide necessary compensation for victims, as well as creating standards. Now, here, I believe Judge Moskowitz was talking a good deal about the Abdullah case. Now, Abdullah was decided by the Third Circuit in     the United States to put it out for reference. Thank you.
judges: Schroeder, Trott, Moskowitz